**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**JS-6**

**CIVIL MINUTES -- GENERAL**

Case No. **CV 26-6389-JFW(SKx)** Date: August 21, 2026

Title: Romelia Almeida *-v-* Keolis Transit Services, LLC, et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Julieta Lozano** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):** **ORDER GRANTING PLAINTIFF ROMELIA ALMEIDA'S MOTION FOR REMAND ACTION TO LOS ANGELES COUNTY SUPERIOR COURT [filed 7/10/26; Docket No. 13]**

On July 10, 2026, Plaintiff Romelia Almeida ("Plaintiff") filed a Motion for Remand Action to Los Angeles County Superior Court ("Motion"). On July 27, 2026, Defendant Keolis Transit Services, LLC ("Keolis") filed its Opposition. On August 3, 2026, Plaintiff filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's August 17, 2026 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I. Factual and Procedural Background

### A. Background Facts

Plaintiff worked for Keolis as a coach operator out of the Foothill Transit facility located in Pomona, California, from 2004 through September 29, 2025. Plaintiff was also a member of the Teamsters Union, Local 848 ("Local 848"). According to Keolis, a Collective Bargaining Agreement, effective July 1, 2022, through June 30, 2026, between Keolis and Local 848 (the "CBA") governed Plaintiff's employment. Ashley Collins (erroneously sued as "Ashley Hughes") ("Collins") is a Human Resources Representative with Keolis. Samantha Hughes (erroneously sued as "Samantha Hagan") ("Hughes") was one of Plaintiff's supervisors at Keolis and left her employment at Keolis on January 24, 2026.

According to Plaintiff, in early 2025, she began experiencing serious mental health issues, including major depressive disorder, acute stress disorder, anxiety, caregiver stress, and family stress. Plaintiff was absent from work, purportedly due to her various mental health conditions, on multiple occasions throughout 2025, including an extended medical leave from June 27, 2025, through August 1, 2025. On September 29, 2025, Keolis terminated Plaintiff, citing an alleged second no-call/no-show within a six-month time frame.

**B. Procedural History**

On May 5, 2026, Plaintiff filed her Complaint against Keolis, Collins, and Hughes in Los Angeles County Superior Court ("LASC"), alleging causes of action for: (1) mental disability discrimination in violation of California Government Code § 12940(a); (2) age discrimination in violation of California Government Code § 12940(a); (3) retaliation for protected activity in violation of California Government Code § 12940(h); (4) harassment and hostile work environment in violation of California Government Code § 12940(j); (5) failure to prevent discrimination, harassment, and retaliation in violation of California Government Code § 12940(k); (6) failure to provide reasonable accommodation in violation of California Government Code § 12940(m); (7) failure to engage in the interactive process in violation of California Government Code § 12940(n); (8) interference with California Family Rights Act ("CFRA") leave rights in violation of California Government Code § 12945.2; (9) retaliation for exercising CFRA rights in violation of California Government Code § 12945.2; (10) wrongful termination in violation of public policy; (11) whistleblower retaliation in violation of California Labor Code § 1102.5); (12) retaliation for exercising California Labor Code rights in violation of California Labor Code § 98.6; (13) negligent hiring, supervision, and retention; (14) failure to timely pay wages when due in violation of California Labor Code § 204; (15) failure to provide meal periods in violation of California Labor Code § 512; (16) failure to provide rest periods in violation of California Labor Code § 226.7; (17) failure to reimburse business expenses in violation of California Labor Code § 2802; (18) failure to timely pay final wages at separation in violation of California Labor Code §§ 201–03; (19) failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (20) failure to maintain required payroll and employment records in violation of California Labor Code § 1198.5; and (21) unfair business practices in violation of California Business & Professions Code §§ 17200, *et seq*.

On June 10, 2026, Keolis and Collins filed their Answers. On June 11, 2026, Keolis filed a Notice of Removal, alleging this Court has federal question jurisdiction based on Section 301 of the Labor Management Relations Act ("LMRA").[1]

---

[1] Neither Collins nor Hughes joined or consented to the removal of this action and Keolis failed to explain why they did not join or consent to the removal in its Notice of Removal. *See, e.g.*, *Naqvi v. US Med. Home, Inc*., 2014 WL 1338262, at *2 (N.D. Cal. Mar. 31, 2014) ("On the record, the removal was defective because Keselica failed to obtain joinder or consent of all defendants who had been served at the time of removal. Harvard Business Services never joined or consented to the removal. This alone is enough to remand"). Although Hughes has not yet appeared in this action, Collins filed her Answer prior to the removal of this action. As a result, Keolis's failure to obtain Collins's joinder or consent to the removal of this action is another ground for the remand of this action. *See Beltran v. Monterey Cnty*., 2009 WL 585880, at *2 (N.D. Cal.

## II. Legal Standard

A motion to remand is the proper procedure for challenging removal. *See N. Cal. Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

## III. Discussion

In her Motion, Plaintiff seeks an order remanding this action to LASC on the ground that Defendant wrongfully removed this action on the basis of federal question jurisdiction under Section 301 of the LMRA. Plaintiff argues that her Complaint only alleges California statutory and public-policy claims, not claims for breach or violation of the CBA. Plaintiff also argues that her claims do not require interpretation of the CBA. Keolis and Collins (collectively, "Defendants") argue that Plaintiff's claims require the interpretation of the CBA and, as a result, federal question jurisdiction exists under Section 301 of the LMRA.

### A. Legal Standard for Section 301 Preemption

"The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (cleaned up). Federal courts must "reject federal jurisdiction if there is any doubt as to the right of removal in the first instance." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 550 (9th Cir. 2018) (cleaned up).

Under the "well-pleaded complaint rule," "federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Ordinarily federal pre-emption is raised as a defense," and "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint." *Id*. at 392–93 (italics in original). "A corollary to the well-pleaded complaint rule is the 'complete preemption' doctrine, which applies in cases in which 'the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007) (*quoting Caterpillar*, 482 U.S. at 393).

---

Mar. 6, 2009) ("If the district court discovers that all defendants have not joined or consented to removal, it must remand the case") (citation omitted).

As the Ninth Circuit explained, in relevant part:

> In spite of its title, the "complete preemption" doctrine is actually a doctrine of jurisdiction and is not to be confused with ordinary preemption doctrine (although it is related to preemption law). Thus, the 'complete preemption' doctrine does not abrogate the standard rule that a defense of preemption does not create federal question jurisdiction.

*Balcorta v. Twentieth Century-Fox Film Corp*., 208 F.3d 1102, 1107 n.7 (9th Cir. 2000).

"Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc*., 913 F.3d 1146, 1151 (9th Cir. 2019) (*citing Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)). As a result, "a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Id.* at 1152. However, "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994).

In *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007), the Ninth Circuit adopted a two-part test for analyzing whether Section 301 preempts a state law claim. Under the *Burnside* test, courts first "ask whether the asserted cause of action involves a right [that] exists solely as a result of the [collective bargaining agreement]." *Curtis*, 913 F.3d at 1152 (cleaned up). If the answer to the first question is yes, then "the claim is preempted and [the] analysis ends there." *Id.* at 1152–53 *(quoting Burnside*, 491 F.3d at 1059). If the answer to the first question is no, then courts "proceed to the second step and ask whether a plaintiff's state law right is substantially dependent on analysis of" the CBA. *Id*. (cleaned up). To answer this question, courts consider "whether the claim cannot be resolved by simply look[ing] to versus interpreting the CBA." *Id*. (cleaned up); *see also Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished").

### B. Defendant Has Failed to Meet Its Burden of Establishing Federal Question Jurisdiction Based on Section 301 Preemption

#### 1. Step One of the *Burnside* Test

Under step one of the *Burnside* test, "[t]he essential inquiry is this: Does the claim seek purely to vindicate a right or duty created by the CBA itself? If so, then the claim is preempted, and the analysis ends there." *Curtis*, 913 F.3d at 1152 (cleaned up). In her Complaint, Plaintiff pleads claims under California Government Code §§ 12940 and 12945.2, California Labor Code §§ 98.6, 201-204, 226, 226.7, 512, 1102.5, 1198.5, and 2802, and California Business and Professions Code § 17200 *et seq*. Plaintiff also pleads a claim for violation of public policy "as articulated in the Constitution and statutory laws of the State of California" and a claim for negligent hiring, supervision, and retention pursuant to the CFRA. Plaintiff does not plead a claim for breach of the CBA, violation of the CBA, or violation of the LMRA. As a result, based on the face of the Complaint, the Court concludes that Plaintiff seeks to vindicate rights created by state

law, not the CBA. *See Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1089 (9th Cir. 2025) (holding that Section 510 overtime claims and Section 512 meal and rest break claims did "not arise exclusively from the CBAs, but rather from 'right[s] conferred' by state law" and so the claims were not preempted pursuant to step one of the *Burnside* test). In addition, "if a plaintiff's claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Id.*, at 1092-93 ("Although [Defendant] does not label its arguments as 'defenses,' that is what they are"); *see also Balcorta*, 208 F.3d at 1107 n.7 ("[T]he 'complete preemption' doctrine does not abrogate the standard rule that a defense of preemption does not create federal question jurisdiction").

In their Opposition, Defendants argue that Plaintiff's wage-and-hour claims "related to" overtime pay are preempted under step one of the *Burnside* test.[2] Defendants contend that these claims are actually claims under the CBA because the California Labor Code sections that are the basis of Plaintiff's claims do not apply to an employee covered by a CBA. Indeed, California Labor Code § 514 provides that "Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement" meets certain requirements. However, as Defendants admit, Plaintiff did not plead a claim for overtime pay. Instead, Defendants argue that Plaintiff's claims for failure to provide meal and rests breaks, failure to timely pay final wages at separation, and failure to provide accurate itemized wage statements cumulatively "amount to" a claim for unpaid overtime wages. The Court finds Defendants' argument unpersuasive. In addition, "a number of courts have recognized that 'the applicability of Labor Code [Section] 514 . . . is an affirmative defense [a defendant] must prove and plead'" and, as a result, "the applicability of Section 514 is irrelevant to the jurisdictional analysis." *Libbey v. John Muir Health*, 2026 WL 2392751 (N.D. Cal. Aug. 17, 2026) (*quoting McCray v. Marriott Hotel Services, Inc.*, 902 F.3d 1005 (9th Cir. 2018)); *see also Hernandez v. Pac. Underground Constr., Inc.*, 794 F. Supp. 3d 696, 704-07 (N.D. Cal. 2025); *Cortes v. Mass Elec. Constr. Co.*, 2025 WL 3685194, at *3-5 (N.D. Cal. Dec. 18, 2025); *Alvarez v. Consol. Eng'g Lab'ys*, 2026 WL 734529, at *5-6 (N.D. Cal. Mar. 16, 2026); *Sica v. Silicon Valley Mech., Inc.,* 2026 WL 1379906, at *1 (N.D. Cal. May 13, 2026). Accordingly, the Court concludes that Plaintiff's wage-and-hour claims arise from rights conferred by state law, not from rights created exclusively by the CBA and, as a result, those claims are not preempted under step one of the *Burnside* test.

Accordingly, the Court concludes that none of Plaintiff's claims are preempted under step one of the *Burnside* test because none of her claims arise exclusively out of the CBA.

### 2. Step Two of the *Burnside* Test

Under step two of the *Burnside* test, the question is "whether litigating the state law claim . . . requires interpretation of a CBA." *Alaska Airlines Inc. v. Schurke,* 898 F.3d 904, 921 (9th Cir. 2018). "'Interpretation' is construed narrowly; it means something more than 'consider,' 'refer to,' or 'apply.'" *Id.* (cleaned up). "[C]laims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* (*quoting Livadas*, 512 U.S. at 124). There is no "active dispute" when "resolving the state law claim requires a court to refer to the CBA and apply its plain

---

[2] Defendants argue that Plaintiff's discrimination and retaliation claims and her meal and rest break claims are preempted under step two of the *Burnside* test.

or undisputed language – for example, 'to discern that none of its terms is reasonably in dispute.'" *Id.* at 922 (*quoting Cramer v. Consol. Freightways Inc*., 255 F.3d 683, 692 (9th Cir. 2001), *as amended* (Aug. 27, 2001)). As a result, "reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment." *Id.* at 927.

Defendants argue that "one or more" of Plaintiff's claims are preempted because they are based on or require interpretation of the CBA. Specifically, Defendants argue that Plaintiff's discrimination claims, retaliation claims, and wage-and-hour claims "related to" unpaid overtime and meal and rest breaks are governed by the CBA. With respect to Plaintiff's discrimination and retaliation claims, Defendants argue that those claims are based on Plaintiff's allegations that Keolis discriminated against her on the basis of her mental disability by terminating her after improperly designating some of her absences as attendance violations ("No-Call/No-Show") even though Plaintiff submitted medical documentation for those absences. Defendant notes that the CBA contains a "Standalone Attendance/Tardiness Policy" that defines "No Call, No Show" as "when an employee does not call in to report their absence after two (2) hours of their sign on time." According to Defendants "[i]t is highly likely Plaintiff will contest Keolis's interpretation of this policy in litigation." Opposition, 10:12-13. However, despite arguing that "[i]nterpretive issues abound," Defendants fail to identify "any *interpretive dispute* about a CBA term that must be resolved to determine" the outcome of Plaintiff's claims. *Renteria-Hinojosa*, 150 F.4th at 1090 (emphasis added). Indeed, Ninth Circuit precedent requires more than mere application of the CBA for LMRA preemption under step two. *See Curtis*, 913 F.3d at 1153. "'Interpretation' is construed narrowly," and "claims are only preempted [at step two] to the extent there is an active dispute over the meaning of contract terms." *Id.* (citation omitted). Defendants argue that because Plaintiff is alleging that Keolis improperly designated some of her absences as attendance violations, Plaintiff "disputes" Keolis's interpretation of the CBA's "Standalone Attendance/Tardiness Policy." However, although "[i]t is true that [the Court] may need to read the CBA, analyze the complex interplay of its provisions, and apply it to the facts to determine whether [Plaintiff] or [Defendants] are correct," "mere application of the CBA – even if complicated – does not rise to the level of interpretation for the Court to find" Plaintiff's discrimination and retaliation claims preempted. *Mayo v. Aspire Bakeries, LLC*, 2026 WL 1957836 (July 6, 2026) (concluding that the court answering "questions includ[ing] determining what an 'occurrence' is under the CBA, when an absence qualifies as paid sick leave, how the rolling twelve-month lookback is calculated, whether [the plaintiff's] absences were properly classified, whether [the employer defendant] correctly applied the half-occurrence rule, and whether the doctor's note was satisfied and the consequences thereof" did not "constitute interpretation as defined by the Ninth Circuit's LMRA preemption test").

Similarly, with respect to Plaintiff's wage-and-hour claims, Defendants argue that those claims are preempted because they are based on or require interpretation of the CBA. Specifically, Defendants argue that Plaintiff's claims will require the Court to interpret various provisions of and terms used in the CBA, including "regular workday," "pre-trip inspection," "walk around," reporting obligations, travel time, and scheduling practices. However, Defendants have failed to identify an "active dispute over the meaning" of any of these provisions or terms. *Libby*, 2026 WL 2392751, at *3. At most, Defendants have demonstrated only that the Court may need to examine or apply the CBA's provisions and terms, not that the Court will need to interpret any of those provisions or terms. *See Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms

is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished"); *see also Alaska Airlines*, 898 F.3d at 921 (holding that to require interpretation of a CBA, there must be "an active dispute over the meaning of the contract terms" and that neither a "hypothetical connection between the claim and the terms of the CBA" nor the need to "refer to the CBA and apply its plain or undisputed language" preempts the claim"). In addition, although Defendants may ultimately prevail on the merits of their defense that Plaintiff is exempt from bringing a claim under the sections of the Labor Code she invokes because any claims she has are covered by the CBA, "that simply means that [Plaintiff's] claims fail, not that [her] rights are derived from the CBA." *Hernandez v. Pacific Underground Construction, Inc.*, 794 F. Supp. 3d 696, 705 (N.D.Cal. 2025).

Accordingly, the Court concludes that none of Plaintiff's claims are preempted under step two of the *Burnside* test because Defendants have failed to demonstrate that her claims require interpretation of the CBA.

## IV. Conclusion

For all the foregoing reasons, Plaintiff's Motion is **GRANTED**, and this action is **REMANDED** to Los Angeles Superior Court for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.